OPINION
{¶ 1} Plaintiff-appellant, William Walker, appeals from a Mahoning County Common Pleas Court decision granting summary judgment in favor of defendant-appellee, Mark Bunch, Jr., on appellant's claim for personal injury.
 {¶ 2} Appellee is the boyfriend of Jacqueline DiBucci. DiBucci is appellant's ex-wife. Appellant and DiBucci share two children.
 {¶ 3} On June 1, 2002, appellant and his girlfriend, Christine Golubic, brought the children to a soccer game at the Boardman soccer fields. DiBucci was also present at the soccer game with appellee. After the game, DiBucci and appellee walked with appellant and the children to appellant's car. Appellant and DiBucci became involved in an argument about their children's soccer photographs. According to appellee, appellant raised his hand as if to strike DiBucci so appellee stepped between them and pinned appellant against the car. According to appellant, as he attempted to enter his car, appellee suddenly ran over to the car. As appellee moved from the front of the car to the driver's side, appellant alleges that appellee pushed into the open driver's side door, pinning appellant between the car door and the door frame.
 {¶ 4} Appellant freed himself and left the soccer fields. He went directly to the police department to report the incident and later filed a sworn complaint alleging that appellee knowingly assaulted him. Appellant suffered broken ribs as a result of being pinned by the car door.
 {¶ 5} On May 26, 2004, appellant filed a complaint against appellee asserting appellee "negligently and carelessly acted so that he caused the car door of the motor vehicle * * * to violently slam" into appellant resulting in personal injury to appellant.
 {¶ 6} Appellee subsequently filed a motion for summary judgment. He asserted that appellant's claim was really a claim for assault and battery, not negligence, and was therefore time barred by the one-year statute of limitations for intentional torts.
 {¶ 7} The trial court found that no genuine issue of material fact existed and sustained appellee's motion. Appellant filed a timely notice of appeal on August 17, 2005.
 {¶ 8} Appellant raises two assignments of error. Because the assignments of error are interrelated, we will address them together. The first assignment of error states:
 {¶ 9} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT/APPELLEE BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO WHETHER THE APPELLEE'S ACTS CONSTITUTED NEGLIGENCE VERSUS AN INTENTIONAL TORT."
 {¶ 10} Appellant argues that an issue of fact exists as to whether appellee intentionally or negligently made contact with him by way of the car door. He points out that he submitted evidence that there was no offensive touching between his person and appellee's person. Appellant alleges that appellee's body hit his car door as he was entering his car. He contends that reasonable minds could conclude that appellee was trying to take the soccer photographs from him and, in the process, appellee carelessly and negligently pushed the car door into him. Appellant asserts that Golubic's affidavit supports this version of events. He argues that the fact that appellee contests this version of events only serves to support his position that a genuine issue of material fact exists.
 {¶ 11} In response, appellee contends that the essential character of appellant's complaint is an intentional, offensive touching, not a negligent act. Appellee points to appellant's description of the incident for support.
 {¶ 12} Appellant's second assignment of error states:
 {¶ 13} "THE TRIAL COURT ERRED IN GRANTING SUMMARY JUDGMENT IN FAVOR OF DEFENDANT/APPELLEE BECAUSE GENUINE ISSUES OF MATERIAL FACT EXIST AS TO THE INTENT OF THE APPELLEE WHEN HE MADE CONTACT WITH A CAR DOOR WHICH SUBSEQUENTLY HIT THE PLAINTIFF/APPELLANT AND CAUSED PLAINTIFF/APPELLANT INJURY."
 {¶ 14} Appellant argues that there is no evidence demonstrating that appellee had the intent to push the car door into him and cause him injury. He contends that whether he reported appellee's conduct to the police and filed criminal assault charges against appellee is irrelevant and inadmissible in this civil action.
 {¶ 15} In reviewing an award of summary judgment, appellate courts must apply a de novo standard of review. Cole v. Am.Indus. Resources Corp. (1998), 128 Ohio App.3d 546, 552,715 N.E.2d 1179. Thus, we shall apply the same test as the trial court in determining whether summary judgment was proper. Civ.R. 56(C) provides that the trial court shall render summary judgment if no genuine issue of material fact exists and when construing the evidence most strongly in favor of the nonmoving party, reasonable minds can only conclude that the moving party is entitled to judgment as a matter of law. State ex rel. Parsonsv. Flemming (1994), 68 Ohio St.3d 509, 511, 628 N.E.2d 1377. A "material fact" depends on the substantive law of the claim being litigated. Hoyt, Inc. v. Gordon Assoc., Inc. (1995),104 Ohio App.3d 598, 603, 662 N.E.2d 1088, citing Anderson v. LibertyLobby, Inc. (1986), 477 U.S. 242, 247-248, 106 S.Ct. 2505,91 L.Ed.2d 202.
 {¶ 16} The statute of limitations for an intentional tort, such as assault and battery, is one year. R.C. 2305.111. The statute of limitations for a negligence action is two years. R.C.2305.10(A). In this case, appellant filed his complaint more than one year but less than two years after the incident.
 {¶ 17} Regarding the statutes of limitations for assault and battery and negligence, the Ohio Supreme Court has held:
 {¶ 18} "Where the essential character of an alleged tort is an intentional, offensive touching, the statute of limitations for assault and battery governs even if the touching is pled as an act of negligence. To hold otherwise would defeat the assault and battery statute of limitations. Nearly any assault and battery can be pled as a claim in negligence. We agree with the court in Grimm v. White (1980), 70 Ohio App.2d 201, 203, 24 O.O.3d 257, 258, 435 N.E.2d 1140, 1141-1142, which recognized that: `* * * [T]hrough clever pleading or by utilizing another theory of law, the assault and battery cannot be [transformed] into another type of action subject to a longer statute of limitations as it would circumvent the statute of limitations for assault and battery to allow that to be done.' See, also, Arendv. Mylander (1931), 39 Ohio App. 277, 10 Ohio Law Abs. 492,177 N.E. 377." Love v. City of Port Clinton (1988),37 Ohio St.3d 98, 99-100, 524 N.E.2d 166.
 {¶ 19} Thus, we must determine if a question of fact exists as to whether appellant's claim was truly a claim in negligence, as he alleges, or a claim for assault and battery that he disguised as a claim in negligence, as appellee alleges.
 {¶ 20} Both parties seem to agree that the incident started when DiBucci saw that appellant had the children's soccer pictures in his hand. DiBucci and appellant had each paid for a portion of the pictures. DiBucci wanted appellant to give her the pictures so she could divide them. Appellant refused and told her he would give them to her the next day. This led into an argument between the two surrounding the pictures. This argument occurred while DiBucci and appellant were walking towards the parking lot with the children and Golubic. Appellee may or may not have been walking with the group at the time. Either way, appellee was not involved in the argument. When they reached appellant's car, the children got in the backseat and Golubic either went to the passenger side door or got in the passenger seat. Appellant went to the driver's side and opened the door. He stood between the open door and the car. This is where the agreement as to the facts ends.
 {¶ 21} In his deposition, appellant testified that he saw appellee walking closer to him. (Walker dep. 53). He stated that appellee then "rushe[d] and smashe[d] the door into my side as I was opening the door to get in." (Walker dep. 53). This caused him to drop the pictures. (Walker dep. 56). As appellee was "holding" appellant against the door, DiBucci picked up the pictures. (Walker dep. 56). Appellant then stated that "after the pictures dropped and she [DiBucci] had the pictures, after a few seconds he [appellee] let go of the door." (Walker dep. 57).
 {¶ 22} Appellant stated that appellee did not say a word to him before rushing into the door. (Walker dep. 53). He stated that he had not threatened DiBucci, tried to hit her, or raised his hand to her in any way. (Walker dep. 54). Appellant described himself as being "pinned against" the car because appellee outweighed him by at least 50 pounds. (Walker dep. 55). When asked "was [appellee] just using the car door to hold you there, to pin you there," appellant responded "correct." (Walker dep. 59). He later stated that appellee "ran up, smashed the door into me, and then held me there." (Walker dep. 65).
 {¶ 23} Finally, appellant acknowledged that he signed a criminal complaint, which stated in part that appellee "[d]id knowingly cause or attempt to cause physical harm to" appellant. (Walker dep. 68-69; Ex. A).
 {¶ 24} Appellee gave a slightly different version of the incident. He stated that he went over to appellant and DiBucci to see what they were arguing about. (Bunch dep. 25). Appellee saw appellant with his hand up as if he might try to hit DiBucci. (Bunch dep. 26). This caused appellee to grab appellant and pin him against the car. (Bunch dep. 30). Appellee stated that he grabbed appellant by the arm and the throat and pinned appellant up against the car. (Bunch dep. 31). He acknowledged that the car door was open but denied pushing it against appellant. (Bunch dep. 313-2).
 {¶ 25} Appellee also testified that he was charged with assault as a result of the incident. (Bunch dep. 38-39). The parties stipulated that appellee ultimately was convicted of negligent assault.[1] (Bunch dep. 39).
 {¶ 26} DiBucci also gave her version of the incident. She stated that she and appellant were arguing over the photographs and appellant raised his hand to her. (DiBucci dep. 22). She stated that appellee then grabbed appellant by the shoulders. (DiBucci dep. 23, 33-34). DiBucci stated that when appellee grabbed appellant, appellant's car door was in between the two men. (DiBucci dep. 25). She stated that she would not characterize appellee's actions towards appellant as an assault. (DiBucci dep. 30). Finally, she stated that she picked up the pictures when appellant dropped them and she and appellee left. (DiBucci dep. 35).
 {¶ 27} In addition to the depositions, appellant filed two affidavits in support of his brief in opposition to appellee's motion for summary judgment.
 {¶ 28} In his own affidavit, appellant somewhat contradicted his deposition testimony. He specifically stated:
 {¶ 29} "As I proceeded to get into my vehicle, Mark Bunch suddenly ran over to my automobile. Mark Bunch came from the front of the car to the driver's side where the driver's side door was open. As Mark Bunch hurriedly made this movement he ran into my driver's side door and hit the door. The car door then hit my body as I was getting into my car. At that point I became pinned between the car door and door frame and I dropped the packet of soccer photographs I had in my hand." (Walker aff. ¶ 6).
 {¶ 30} Appellant also stated that he did not believe that appellee intended to hit the car door with such force as to hit him and cause an injury. (Walker aff. ¶ 8). And appellant stated that the car door was forced into his body by appellee's carelessness, momentum, and body weight. (Walker aff. ¶ 9).
 {¶ 31} Appellant also submitted Golubic's affidavit. Golubic stated that she was seated in the passenger seat of appellant's car when she saw appellee coming in a rushed manner from the front of the car to the driver's side while appellant was just about to get into the car. (Golubic aff. ¶ 4). She stated that as appellee went over to the driver's side of the car, his body hit the open car door and the car door hit appellant. (Golubic aff. ¶ 5). Golubic further stated that she did not witness appellee touch appellant. (Golubic aff. ¶ 6). She only noticed appellee "carelessly" cause the car door to hit appellant. (Golubic aff. ¶ 6). Golubic concluded:
 {¶ 32} "I do not believe Mark Bunch intended to hit the car door into William Walker and cause him injury. Rather, I believe Mr. Bunch was trying to get from William a packet of soccer photographs that William had in his hands as William was getting into the car. I believe when Mark Bunch went for the photographs, he accidently [sic.] hit the car door which then caused the car door to push into William and William was momentarily pinned between the car and the car door." (Golubic aff. ¶ 8).
 {¶ 33} First, it should be noted that appellant cannot create a genuine issue of material fact by submitting his own affidavit that contradicts his deposition testimony. "A party may not attempt to create a genuine issue of material fact by submitting an affidavit directly contradicting his own deposition testimony in response to defendant's summary judgment motion." Fifth ThirdBank v. Jones-Williams, 10th Dist. No. 04AP-935, 2005-Ohio-4070, at ¶ 25, quoting Booth v. Caldwell (Apr. 30, 1996), 10th Dist. No. 95APE10-1367. The dissent quotes a recent Ohio Supreme Court decision for support that holds: "An affidavit of a party
opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat the motion for summary judgment." (Emphasis added.) Byrd v.Smith, 110 Ohio St.3d 24, 2006-Ohio-3455, paragraph three of the syllabus. However, the present case is distinguishable. TheByrd decision dealt with a situation where the plaintiff submitted his own affidavit that contradicted his former deposition testimony in his opposition to summary judgment. In this case, while appellant's affidavit somewhat contradicts his deposition testimony, appellant's is not the affidavit that creates a genuine issue of material fact. Instead, it is the affidavit of another witness (Golubic), a non-party to the action, which creates the genuine issue of material fact.
 {¶ 34} Appellant relies on Forsythe v. Conatser, 2d Dist. No. 19989, 2004-Ohio-2606, for support. In that case, Forsythe's complaint alleged that Conatser negligently or intentionally struck Forsythe with his truck. Conatser filed a summary judgment motion alleging that Forsythe's claim was one for assault and battery and the one-year statute of limitations had expired. The trial court granted Conatser's motion. The Second District reversed. It found:
 {¶ 35} "Forsythe's complaint alleges that Conatser acted intentionally or negligently in hitting Forsythe with his car. Conatser claims that, based on the police report, the only reasonable conclusion was that Conatser had acted intentionally. In our view, however, the events as described to the police officer by Forsythe do not lead inextricably to the conclusion that Conatser acted intentionally. According to the police report, Forsythe reported that Conatser had swung his truck door open, banging it into Forsythe's knee, then swerved, hitting Forsythe with his truck and running over his foot, as he drove away. The facts that Conatser hit Forsythe with the truck door and then with the tire of the truck as he drove away do not compel the conclusion that Conatser did so intentionally. Indeed, in Forsythe's deposition, when asked whether Conatser had hit him with the door intentionally, Forsythe indicated that he was unable to answer with certainty. He reiterated how his injuries had occurred but, as with the police report, Forsythe did not express a clear opinion about whether Conatser had intended to injure him. In fact, Forsythe indicated that Conatser had appeared to be confused about whether his truck was in drive or in reverse. In his deposition, Forsythe indicated that he was 99 percent sure that Conatser had thought the truck was in drive when it went backward and hit Forsythe. Based on this evidence, a reasonable person could conclude that Forsythe had stated causes of action for both an intentional tort and for negligence. While the trial court properly concluded that any claim for an intentional tort was barred by the statute of limitations, it erred in granting summary judgment on Forsythe's claim with respect to negligence." Id. at ¶ 12.
 {¶ 36} Appellant asserts that this case is analogous toForsythe. He argues that both cases involved conduct by the defendants that could lead reasonable minds to reach different conclusions regarding whether the conduct was negligent or intentional.
 {¶ 37} Appellee argues that the case at bar is distinguishable from Forsythe. He points out that inForsythe, both the police report and Forsythe's deposition reflected that Forsythe was unsure whether Conatser's actions were intentional. However, in this case, appellee argues appellant's deposition and the police report reflect that appellant believed appellee's actions were intentional.
 {¶ 38} Neither party introduced the police report as a deposition exhibit in this case. Appellee's attorney referenced it while questioning appellant, but we do not have a copy of it. Thus, we cannot conclude, as appellee wishes us to, that the police report reflected that appellee's actions were intentional. Appellant did however sign a criminal complaint stating that appellee knowingly caused or attempted to cause physical harm to him.
 {¶ 39} While appellant may have signed a sworn statement that appellee knowingly caused or attempted to cause physical harm to him, that is merely how appellant perceived the incident at the time. Appellant could only give his opinion, based on appellee'sactions, as to what appellee's intent was when appellee pinned him with the car door. Appellant's perception of appellee's actions is not necessarily conclusive of whether appellee's conduct was intentional or negligent. In order to determine whether appellee's actions were intentional or negligent, we must consider how each person who witnessed the incident perceived appellee's actions.
 {¶ 40} In this case we have four versions of how the incident occurred: (1) appellee ran up to appellant, smashed the car door into him, and held appellant pinned between the car and the door for a few seconds (appellant's version); (2) appellee saw appellant raise his hand to DiBucci, grabbed appellant by the shoulder and throat, and held appellant against the car (appellee's version); (3) appellee saw appellant raise his hand to DiBucci, reached over the car door, and grabbed appellant by the shoulders (DiBucci's version); and (4) appellee rushed over to the car to get the photographs from appellant, and in the process, carelessly or accidentally ran into the open car door pushing it into appellant (Golubic's version). Versions one, two, and three indicate appellee's actions had an intentional aspect. Version four, however, indicates that appellee's actions were accidental and merely negligent. The conflict between the versions creates a genuine issue of material fact as to appellee's intent.
 {¶ 41} This is summary judgment and we are not to weigh the evidence. We are to construe the evidence most strongly in appellant's favor. Keeping in mind that we are to construe the evidence in the light most favorable to appellant, Golubic's affidavit creates a genuine issue of material fact. While appellee may have acted intentionally in attempting to grab the photographs from appellant, Golubic's affidavit states that appellee accidentally hit the car door into appellant. Since appellant submitted some evidence that creates an issue of fact as to whether appellee's conduct was intentional or negligent, summary judgment was not appropriate. Accordingly, appellants' assignments of error have merit.
 {¶ 42} For the reasons stated above, the trial court's judgment is hereby reversed and the case is remanded for further proceedings pursuant to law and consistent with this opinion.
Vukovich, J., concurs.
Waite, J., dissents. See dissenting opinion.
[1] {¶ a} While the parties stipulated that appellee was convicted of negligent assault, they may have been mistaken as R.C. 2904.13 states:
{¶ b} "(A) No person shall negligently, by means of a deadly weapon or dangerous ordnance as defined in section 2923.11 of the Revised Code, cause physical harm to another or to another's unborn.
{¶ c} "(B) Whoever violates this section is guilty of negligent assault, a misdemeanor of the third degree."
{¶ d} There is no indication anywhere that appellee had a deadly weapon or dangerous ordnance during the incident at issue. What the parties likely intended to stipulate to was that appellee was convicted of simple assault. Simple assault is merely an assault defined in R.C. 2903.13 as (A) knowingly causing or attempting to cause physical harm to another or (B) recklessly cause serious physical harm to another.