PETTIFORD, Appellant,

v.

AGGARWAL, Appellee.

[Cite as *Pettiford v. Aggarwal*, 186 Ohio App.3d 705, 2009-Ohio-3642.]

Court of Appeals of Ohio,  
Second District, Montgomery County.

No. 22736.

Decided July 24, 2009.

Lawrence J. White, for appellant.

Arnold, Todaro & Welch and Kevin W. Popham, for appellee.

WOLFF, Judge.

{¶ 1} Barbara Pettiford appeals from a summary judgment issued in favor of appellee, Rajendra Aggarwal, M.D., in a medical-malpractice case. For the following reasons, the judgment of the trial court will be reversed and remanded for further proceedings.

I

{¶ 2} At all times relevant, Dr. Rajendra Aggarwal operated a family practice and minor surgery facility in Dayton, Ohio. Barbara Pettiford was a patient of Dr. Aggarwal.

{¶ 3} In June 1999, Dr. Aggarwal administered chest x-rays and an MRI to Pettiford. After reviewing the x-rays, Dr. Aggarwal reported that the test results were "clear and normal." Dr. Aggarwal conducted another MRI in July 2002 and discovered that Pettiford had a large mass in her lungs. Pettiford was hospitalized shortly thereafter for a collapsed lung, and her right lung was removed in August 2002.

{¶ 4} In 2003, Pettiford filed a medical-malpractice action against Dr. Aggarwal, but dismissed the action without prejudice. Pettiford then refiled the medical-malpractice action in 2005, contending that Dr. Aggarwal had breached the applicable standard of care by failing to properly administer and read the 1999 MRI and x-rays and by failing to diagnose and timely treat the lung mass.

{¶ 5} In February 2006, Dr. Aggarwal filed a motion for summary judgment, supported only by his own brief affidavit. Dr. Aggarwal stated that he had reviewed all the medical records in the case. Dr. Aggarwal concluded that he had not deviated from accepted standards of medical care and that any injury Pettiford had sustained was not caused by any deviations from recognized standards of medical care.

{¶ 6} Pettiford's response memorandum was accompanied by letters from two doctors, Dr. Klein and Dr. Sickles, who both stated that Dr. Aggarwal had deviated from accepted standards of care by failing to see a lung mass that was present on the 1999 film. Although these letters were not presented in acceptable Civ.R. 56 format, Pettiford also submitted an affidavit from Dr. Sickles. In the affidavit, Dr. Sickles stated that he was board-certified in family practice and spent more than 75 percent of his time in the clinical practice of medicine. Dr. Sickles further indicated that he had reviewed Pettiford's medical records, including records from Good Samaritan Hospital and the chest x-rays that were taken in Dr. Aggarwal's office in June 1999 and July 2002. In an affidavit attached to the Pettiford response to the motion for summary judgment, Dr. Sickles stated:

{¶ 7} "7. It is my opinion to a reasonable degree of medical certainty that Dr. Aggarwal deviated from the acceptable standard of care for a family physician by failing to recognize the lung mass on Ms. Pettiford's x-ray as of June 18, 1999. While this film is over penetrated, the mass is still visible on this film.

{¶ 8} "8. Of incidental note as I was viewing this x-ray on our view box, one of my partners, unprompted, looking over my shoulder, was also able to recognize that there was an abnormality in the right hilar area.

{¶ 9} " * * *

{¶ 10} "10.  Dr. Aggarwal could have met the applicable standard of care by either using a hot light to better view the over penetrated areas of the film, although I do not believe that this is absolutely necessary to see the mass in the right hilar area.  He further could have repeated the film with less penetration in order to get better images or he could have referred the film out to a radiologist for a reading if he was uncertain what the reading of the film should be.

{¶ 11} "11.  In any event, it is my opinion that a family physician who undertakes the responsibility for reading chest x-rays should have not missed this lesion.

{¶ 12} "12.  Failure to recognize this was a deviation from the standard of care of a physician undertaking that responsibility."

{¶ 13} Upon reviewing the materials submitted in connection with the motion for summary judgment, the trial court overruled the motion in June 2006.  The court stated, "Clearly there is a genuine issue of material fact present.  As such, summary judgment is inappropriate."

{¶ 14} The case was set for trial during 2006 and 2007.  However, the trial court granted a joint motion for continuance in 2006 and a defense motion for continuance in 2007.  The trial ultimately was scheduled to begin on February 11, 2008, with a final pretrial to be held January 30, 2008.  The summary judgment motion deadline was also extended until November 13, 2007.

{¶ 15} In November 2007, defense counsel took a discovery deposition of Dr. Sickles.  At the deposition, Dr. Sickles stated that he had reviewed everything he needed to form his full and final opinions in the case and that he was prepared to give those opinions.  Dr. Sickles then expressed essentially the same opinions he had mentioned in his earlier affidavit.  Dr. Sickles reiterated that Dr. Aggarwal had deviated from acceptable standards of medical care by failing to recognize the lung mass on Pettiford's June 1999 x-ray.  Sickles also stated that Dr. Aggarwal could have done a number of things to meet the standard of care, including repeating the film, using a hot-light, sending the film out for an "over-read," sending Pettiford for a CAT scan, or referring Pettiford to a specialist if he did not know what caused her symptoms.

{¶ 16} During this deposition, Dr. Sickles said that he did not intend to render any opinions about the treatment Pettiford may have undergone if a diagnosis had been made in June 1999.  He further stated that he did not intend to render

any opinions about the effect of the alleged three-year delay upon Pettiford's treatment or course and did not intend to render any causation opinions.

{¶ 17} On January 30, 2008, Dr. Aggarwal filed a second motion for summary judgment, alleging that Pettiford had conceded that she would be unable to provide expert testimony on causation. This statement and the motion were based on the above causation testimony in the deposition of Dr. Sickles. In response to the motion, Pettiford submitted another affidavit from Dr. Sickles. This affidavit stated as follows:

{¶ 18} "1. My name is Trent Sickles. I am a licensed physician and I have given sworn testimony regarding the negligence of Dr. Aggarwal by Barbara Pettiford.

{¶ 19} "2. I further agree to testify as an expert for the Plaintiff, Barbara Pettiford regarding damages she has suffered as a direct and proximate result of Dr. Aggarwal's negligence.

{¶ 20} "3. Specifically, I believe that Ms. Pettiford endured pain and suffering for an extensive period of time as a direct and proximate result of Dr. Aggarwal's negligence in failing to diagnose the tumor in her right lung.

{¶ 21} "4. I further believe that Ms. Pettiford suffered the crisis of a collapsed lung, and extended hospital stay as a direct and proximate result of Dr. Aggarwal."

{¶ 22} The affidavit did not set forth an explanation for adding these opinions.[1] In response, Dr. Aggarwal filed a memorandum and a motion to strike the affidavit, contending that affidavits contradicting former deposition testimony may not, without sufficient explanation, be used to create genuine issues of material fact and defeat summary judgment. Subsequently, in a one-paragraph decision, the trial court granted Dr. Aggarwal's motion for summary judgment, without elaborating on its reasoning.

{¶ 23} Pettiford timely appealed, and raises one assignment of error.

## II

{¶ 24} Pettiford's single assignment of error is as follows:

{¶ 25} "The trial court improperly granted summary judgment because there is a genuine issue of material fact that should proceed to trial."

---

1. The memorandum Pettiford filed in the trial court did offer some explanation, including the fact that Dr. Sickles was not an oncologist and interpreted the causation questions to refer to the rate of growth of the tumor from 1999 to 2002 and the lost chance to save the lung due to the delay. However, these comments were not submitted in the form of an affidavit, and we have not considered them in ruling on this matter.

{¶ 26} Under this assignment of error, Pettiford contends that she met the burden of providing expert testimony regarding Dr. Aggarwal's negligence and the causal relationship between the negligence and her injuries. Pettiford further contends that the rule against submitting contradictory affidavits applies only to parties, not nonparty witnesses.

{¶ 27} We review summary judgment decisions de novo, "which means that we apply the same standards as the trial court." *GNFH, Inc. v. W. Am. Ins. Co.*, 172 Ohio App.3d 127, 2007-Ohio-2722, 873 N.E.2d 345, at ¶ 16. "A trial court may grant a moving party summary judgment pursuant to Civ. R. 56 if there are no genuine issues of material fact remaining to be litigated, the moving party is entitled to judgment as a matter of law, and reasonable minds can come to only one conclusion, and that conclusion is adverse to the nonmoving party, who is entitled to have the evidence construed most strongly in his favor." *Smith v. Five Rivers MetroParks* (1999), 134 Ohio App.3d 754, 760, 732 N.E.2d 422.

{¶ 28} According to the Ohio Supreme Court:

{¶ 29} "In order to establish medical malpractice, it must be shown by a preponderance of evidence that the injury complained of was caused by the doing of some particular thing or things that a physician or surgeon of ordinary skill, care and diligence would not have done under like or similar conditions or circumstances, or by the failure or omission to do some particular thing or things that such a physician or surgeon would have done under like or similar conditions and circumstances, and that the injury complained of was the direct and proximate result of such doing or failing to do some one or more of such particular things." *Bruni v. Tatsumi* (1976), 46 Ohio St.2d 127, 75 O.O.2d 184, 346 N.E.2d 673, syllabus. Accord *Moore v. Kettering Mem. Hosp.*, Montgomery App. No. 22054, 2008-Ohio-2082, 2008 WL 1921642, ¶ 20–21.

{¶ 30} The evidence in the present case complies with these requirements and establishes genuine issues of material fact concerning Dr. Aggarwal's breach of care and damages proximately resulting from the breach. However, Dr. Aggarwal contended below, and maintains on appeal, that the affidavit of Dr. Sickles contradicts his prior deposition testimony and cannot be considered under the Ohio Supreme Court decision in *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47.

{¶ 31} In *Byrd*, the Ohio Supreme Court considered a certified conflict on the issue of "whether *a party's affidavit* that is inconsistent with or contradictory to *the party's deposition testimony* should be considered by the trial court in deciding a motion for summary judgment." (Emphasis added.) Id. at ¶ 1.

{¶ 32} The plaintiff in *Byrd* had been injured while driving a van owned or leased by his employer. The plaintiff's deposition testimony clearly indicated

that he was on a personal errand and was not within the scope of his employment while driving the van. Consequently, the employer's insurer filed a summary judgment motion based on that fact.

{¶ 33} In responding to the motion, the plaintiff filed an affidavit outlining facts that contradicted his earlier deposition testimony—or were at least inconsistent— and argued that he was within the scope of his employment at the time of the collision. The trial court did not refer to the affidavit, but granted the insurer's summary judgment motion, based on the plaintiff's admission that he was driving home from his father-in-law's house at the time of the accident.

{¶ 34} In answering the certified question, the Ohio Supreme Court noted that it had "already held that a moving party's contradictory affidavit may not be used to obtain summary judgment." Id. at ¶ 22, citing *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123. The court noted that dispute existed regarding the rule's potential application to nonmoving parties. Id. at ¶ 23. In discussing this point, the Ohio Supreme Court observed that moving and nonmoving parties occupy somewhat different positions with regard to their burden on summary judgment. Whereas movants must show the absence of material fact, nonmovants receive the benefit of all favorable inferences. Id. at ¶ 25. Accordingly, the court stated:

{¶ 35} "We first hold that when determining the effect of a party's affidavit that appears to be inconsistent with the party's deposition and that is submitted either in support of or in opposition to a motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the deposition. Unless a motion to strike has been properly granted pursuant to Civ.R. 56(G), all evidence presented is to be evaluated by the trial court pursuant to Civ.R. 56(C) before ruling. If an affidavit of a movant for summary judgment is inconsistent with the movant's former deposition testimony, summary judgment may not be granted in the movant's favor. * * *

{¶ 36} "With respect to a nonmoving party, the analysis is a bit different. If an affidavit appears to be inconsistent with a deposition, the court must look to any explanation for the inconsistency. We do not say that a nonmoving party's affidavit should always prevent summary judgment when it contradicts the affiant's previous deposition testimony. After all, deponents may review their depositions and correct factual error before the depositions are signed. * * *

{¶ 37} "We hold that an affidavit of *a party* opposing summary judgment that contradicts former deposition testimony of *that party* may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment." (Emphasis added.) *Byrd*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, at ¶ 26–28.

{¶ 38} In the present case, contradictions do exist between the deposition of Dr. Sickles and his subsequent affidavit. However, we conclude that *Byrd* does not control, because *Byrd* deals with contradictory affidavits of parties, not nonparty witnesses. See *Walker v. Bunch,* Mahoning App. No. 05-MA-144, 2006-Ohio-4680, 2006 WL 2590508, at ¶ 33 (distinguishing *Byrd* because it deals only with affidavits of a party). Accord *Gessner v. Schroeder,* Montgomery App. No. 21498, 2007-Ohio-570, 2007 WL 431421, at ¶ 53–57.

{¶ 39} Dr. Aggarwal contends that *Byrd* should apply to expert witnesses, like doctors, who are retained by the parties and whose affidavits are drafted by counsel. However, experts are no different in that regard from other nonparty witnesses. As we previously explained: "The party witness generally has the benefit of counsel to protect him from inadvertent misstatements. Therefore, when a party witness has given certain detrimental answers in a deposition, but subsequently, upon advice of counsel, sets forth averments in an affidavit in order to 'clarify' or 'correct' what was said in the deposition, the subsequent affidavit should be disregarded. The affidavit is being used as a self-serving device to avoid damaging admissions made by the party witness during his deposition.

{¶ 40} "However, in a situation where a non-party witness has given certain testimony in a deposition and then given contradictory averments in a subsequent affidavit, the same factors are not present. Neither the litigant nor his attorney can prevent the non-party witness from deliberately or inadvertently misstating facts during the deposition, at least not to the same extent that the litigant as witness can be protected from inadvertent misstatements during a deposition. Moreover, statements made by the non-party witness in his deposition are not in the nature of judicial admissions." *Clemmons v. Yaezell* (Dec. 29, 1988), Montgomery App. No. 11132, 1988 WL 142397, * 5–6.

{¶ 41} In the present case, Dr. Sickles's statements were not judicial admissions, and Pettiford's counsel was not acting as the attorney for Dr. Sickles at the deposition. From that standpoint, Dr. Sickles was in the same position as other nonparty witnesses who are called to offer testimony.

{¶ 42} Accordingly, *Byrd* does not apply and the absence of an explanation for the alleged contradiction was not required before the trial court could consider Dr. Sickles's testimony. The testimony as given creates genuine issues of material fact for purposes of Dr. Aggarwal's alleged breach of accepted standards of medical care and whether the breach proximately resulted in damages to Pettiford. We note that the jury would be capable of hearing the testimony at trial and deciding the weight it should receive.

{¶ 43} Based on the preceding discussion, Pettiford's assignment of error is sustained.

III

{¶ 44} Having sustained the assignment of error, the judgment of the trial court is reversed, and the matter is remanded for further proceedings.

Judgment reversed
and cause remanded.

GRADY, J., concurs.

DONOVAN, P.J., dissents.

WILLIAM H. WOLFE, J., retired, of the Second Appellate District, sitting by assignment.

GRADY, Judge, concurring.

{¶ 45} A court may strike an affidavit offered in support of or opposition to a motion for summary judgment when it is inconsistent with the affiant's prior deposition or other sworn testimony and the inconsistency is evidentiary in nature and sufficiently unambiguous to deny the subsequent affidavit the presumption of credibility afforded evidentiary materials in a summary judgment proceeding. *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123.

{¶ 46} The statements of opinion in Dr. Sickles's affidavit regarding defendant's alleged negligence are not unambiguously inconsistent with his prior deposition testimony that he did not intend to offer such opinions, because that prior declaration did not necessarily foreclose the possibility that Dr. Sickles, after a further review of the medical records, would form an opinion that would permit him to testify for the plaintiffs, as he apparently did. Furthermore, his statement that he did not intend to testify was not evidentiary in nature, being wholly irrelevant to any claim for relief or defense to it in the litigation. Therefore, the trial court erred when it struck Dr. Sickles's affidavit and granted defendant's motion for summary judgment.

{¶ 47} That is not to say that I in any way disagree with the majority's view that on the holding in *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, the rule of *Turner* is limited to the affidavits of parties to the litigation and therefore cannot apply to Dr. Sickles. I fully concur. I simply believe that the standard Civ.R. 56(C) imposes, that doubts be resolved in favor of the nonmovant, likewise applies to whether or not a genuine inconsistency exists, and that on this record there is not one. Furthermore, because physicians are often reluctant to testify until they know their own malpractice coverage won't be affected, the course of events before us suggests a possible "sandbagging" we ought not endorse.

DONOVAN, Presiding Judge, dissenting.

{¶ 48} I dissent. In Dr. Trent Sickles's deposition, there were several unequivocal statements that he did not intend to offer any opinions on causation, a necessary element of a medical-malpractice claim:

{¶ 49} "Q: Do you intend to render any opinions concerning the treatment that she may or may not have undergone had a diagnosis been made in June of 1999?

{¶ 50} "A: No.

{¶ 51} "Q: Do you intend to render any opinions as to the effect of the alleged three-year delay upon the patient's treatment or course?

{¶ 52} "A: No.

{¶ 53} "Q: Do you intend to render any causation opinions in this case?

{¶ 54} "A: No."

{¶ 55} "Q: What is your understanding of Miss Pettiford's subsequent diagnosis in 2002? What was she diagnosed with?

{¶ 56} "A: My general recollection is lung cancer, but I can't even recall the specifics, because after I looked at the records I pretty much determined that I couldn't testify or give any opinions about causation so I haven't looked at that since a year-and-a-half ago."

{¶ 57} Thereafter, the affidavit of Dr. Sickles was filed on February 6, 2008, the same day the plaintiff filed her memorandum contra defendant's motion for summary judgment and just six days before the judgment of the trial court was rendered. The affidavit, in completely contradicting the prior statements made in the deposition, stated, "I further agree to testify as an expert for the Plaintiff, Barbara Pettiford regarding damages she has suffered as a direct and proximate result of Dr. Aggarwal's negligence."

{¶ 58} Nothing in the record even remotely suggests that Dr. Sickles did not initially want to testify as to causation because apparently, physicians are often reluctant to testify until they know their own medical-malpractice coverage will not be affected. In fact, the record is completely void of any explanation as to why Dr. Sickles changed his testimony in an affidavit submitted the same day as the plaintiff's memorandum in opposition to summary judgment.

{¶ 59} Most differences between a witness's affidavit and deposition are a matter of degree and details rather than direct contradiction as here. If the differences fit into a category of variations on a theme, this is ground for impeachment and not a vitiation of the later filed document. If, on the other hand, the subsequent affidavit is a clear contradiction and indeed a new expert

opinion involving material issues in the suit, without explanation, the affidavit must be disregarded and should not defeat the motion for summary judgment.

{¶ 60} The majority, acknowledging that contradictions exist between the deposition of Dr. Sickles and his subsequent affidavit, concludes that *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, does not control in this case because *Byrd* is inapplicable to nonparty witnesses. I do not agree with such a narrow reading of *Byrd*. Throughout the *Byrd* opinion, the Supreme Court never conclusively holds that it applies only to parties to the litigation.

{¶ 61} Although I would agree that *Byrd* should not apply to some nonparty lay witnesses, I do not agree with the majority that it should not apply to a retained expert witness. In *Clemmons v. Yaezell* (Dec. 29, 1988), Montgomery App. No. 11132, 1988 WL 142397, at * 5–6, we explained the difference between a party witness and a nonparty witness:

{¶ 62} "The party witness generally has the benefit of counsel to protect him from inadvertent misstatements. Therefore, when a party witness has given certain detrimental answers in a deposition, but subsequently, upon advice of counsel, sets forth averments in an affidavit in order to 'clarify' or 'correct' what was said in the deposition, the subsequent affidavit should be disregarded. *The affidavit is being used as a self-serving device to avoid damaging admissions* made by the party witness during his deposition.

{¶ 63} "However, in a situation where a non-party witness has given certain testimony in a deposition and then given contradictory averments in a subsequent affidavit, the same factors are not present. Neither the litigant nor his attorney can prevent the non-party witness from deliberately or inadvertently misstating facts during the deposition, at least not to the same extent that the litigant as witness can be protected from inadvertent misstatements during a deposition." (Emphasis added.)

{¶ 64} When the deposition testimony of a nonparty witness involves a lay witness's recall of factual events and circumstances, I agree that *Byrd* may not apply. However, the issue at bar involves new "opinions" of an expert witness, retained by appellant, for his testimony. In fact, expert witnesses are regulated by more demanding and restrictive discovery rules. In this context, a retained expert witness is more akin to the party in terms of management by counsel and providing testimony favorable to the claims. The issue isn't one of memory or recall, it is one of the forming and subsequent contradictory changing of opinions. Here, the affidavit of Dr. Sickles is being used in the same way prohibited by *Clemmons*: as a self-serving device to avoid damaging testimony given during that deposition. Only after the defendant had filed his motion for summary judgment, stating that the plaintiff had not adduced any evidence as to causation

and damages, did the defendant obtain an eleventh-hour affidavit from Dr. Sickles.

{¶ 65} In *Byrd*, the Supreme Court ruled that a three-step analysis must be followed in determining whether to disregard an affidavit inconsistent with or contradictory to prior deposition testimony when ruling on a motion for summary judgment. First, the trial court must consider whether the affidavit contradicts or merely supplements the deposition.

{¶ 66} Here, as noted above, the attestation in Dr. Sickles's last-minute affidavit is a complete contradiction of the testimony in his deposition. In Dr. Sickles's deposition, he unequivocally indicated that he would not be rendering any opinions as to causation. He stated that since he couldn't give any opinions on causation, he hadn't looked at the plaintiff's file for a year and a half. Furthermore, he agreed that if he were to change his opinion, he would contact the defendant so the defendant could conduct an additional deposition. Thereafter, Dr. Sickles submitted an affidavit that stated: "I further agree to testify as an expert for the Plaintiff, Barbara Pettiford regarding damages she has suffered as a direct and proximate result of Dr. Aggarwal's negligence."

{¶ 67} The second step of the *Byrd* analysis requires the trial court to consider whether an affidavit appears to be inconsistent with a deposition. If so, the court must look to any explanation for the inconsistency.

{¶ 68} Here, there is nothing in the record that provides an explanation for the inconsistency. Dr. Sickles testified that he had no opinion as to causation at his deposition on November 14, 2007. He also agreed that if he were to modify, alter, change, amend, for any additional opinions or modify the ones given the day of the deposition, he would contact plaintiff's counsel so an additional deposition could be held. After the defendant moved for summary judgment on January 30, 2008, the plaintiff filed Dr. Sickles's contradictory affidavit on February 6, 2008, the same day the memorandum contra defendant's motion for summary judgment was filed.

{¶ 69} The final step of the *Byrd* analysis requires that "[o]rdinarily, under [Civ.R.] 56(C), when an affidavit is inconsistent with affiant's prior deposition testimony as to material facts and the affidavit neither suggests affiant was confused at the deposition nor offers a reason for the contradictions in her prior testimony, the affidavit does not create a genuine issue of fact which would preclude summary judgment." *Byrd*, 110 Ohio St.3d at 30, 850 N.E.2d 47. The court thereby suggests that, in this third step, a trial court must examine the depositions and affidavits to determine if there is a valid reason for the inconsistencies. If there is no valid reason for the inconsistencies, the court held, "an affidavit of a party opposing summary judgment that contradicts former deposi-

tion testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment." Id.

{¶ 70} An unsubstantiated assertion is not sufficient to overcome the effect of prior unequivocal testimony under oath. Dr. Sickles had access to the pertinent information at the time of his earlier testimony. He chose not to use the pertinent information because, in his words, "I can't even recall the specifics, because after I looked at the records I pretty much determined that I couldn't testify or give any opinions about causation so I haven't looked at that since a year-and-a-half ago." There is no indication that his opinion on causation is based on newly discovered evidence, nor does the earlier testimony suggest any confusion which the affidavit seeks to explain. Dr. Sickles does not give us a credible explanation based upon further review, careful study, or even fear of loss of insurance, as the separate concurring opinion suggests.

{¶ 71} I would hold that the *Byrd* analysis applies in this case, where an expert witness—hired by the plaintiff—contradicts his unequivocal sworn deposition testimony with an unsubstantiated, and last minute, affidavit. Accordingly, I would affirm the trial court's grant of summary judgment.