PETTIFORD, APPELLEE, *v.* AGGARWAL, APPELLANT.

[Cite as *Pettiford v. Aggarwal,* 126 Ohio St.3d 413, 2010-Ohio-3237.]

*Civil procedure — Summary judgment — Contradiction between affidavit and deposition testimony of expert witness — Explanation required.*

(No. 2009-1602 — Submitted May 11, 2010 — Decided July 14, 2010.)

APPEAL from the Court of Appeals for Montgomery County, No. 22736, 186 Ohio App.3d 705, 2009-Ohio-3642.

_____

SYLLABUS OF THE COURT

An affidavit of a retained, nonparty expert contradicting the former deposition testimony of that expert and submitted in opposition to a pending motion for summary judgment does not create a genuine issue of material fact to prevent summary judgment unless the expert sufficiently explains the reason for the contradiction. (*Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, applied.)

_____

O'CONNOR, J.

{¶ 1} In this appeal, we address whether an affidavit of a nonparty expert that contradicts the expert's deposition testimony can be used to create a genuine issue of material fact and defeat summary judgment. Appellant, Rajendra Aggarwal, M.D., asserts that appellee, Barbara Pettiford, submitted a sham expert affidavit[1] in opposition to Dr. Aggarwal's motion for summary judgment. Dr. Aggarwal urges us to extend our holding in *Byrd v. Smith*, 110 Ohio St.3d 24,

_____
1. The term "sham affidavit" is used by federal courts to describe "a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story, or is willing to offer a statement solely for the purpose of defeating summary judgment." *Jiminez v. All Am. Rathskeller, Inc.* (C.A.3, 2007), 503 F.3d 247, 253.

2006-Ohio-3455, 850 N.E.2d 47, to contradictory affidavits of nonparty expert witnesses and hold that a sham affidavit may not be used to create a triable issue of material fact and thereby defeat summary judgment.

{¶ 2} Conversely, Pettiford contends that her expert's affidavit was not a sham affidavit, because it merely supplemented, and did not contradict, the expert's deposition testimony. In addition, Pettiford argues that the *Byrd* doctrine should not be applied to nonparties, because of the differing interests between parties and nonparties.

{¶ 3} We hold that an affidavit of a retained, nonparty expert contradicting the former deposition testimony of that expert and submitted in opposition to a pending motion for summary judgment does not create a genuine issue of material fact to prevent summary judgment unless the expert sufficiently explains the reason for the contradiction.

{¶ 4} We therefore reverse the judgment of the court of appeals and remand this matter to the trial court for further proceedings consistent with this opinion.

**Relevant Background**

{¶ 5} Dr. Aggarwal is a family-practice physician, and Pettiford was his patient. In June 1999, Pettiford underwent chest x-rays and an MRI that Dr. Aggarwal allegedly interpreted as "clear and normal." In July 2002, a second MRI was performed, and a tumor was discovered on Pettiford's right lung.

{¶ 6} Pettiford filed a medical-negligence action against Dr. Aggarwal, alleging that Dr. Aggarwal had misinterpreted Pettiford's chest x-rays by failing to recognize the tumor. Dr. Aggarwal moved for summary judgment on the grounds that no genuine issues of material fact remained for trial. Dr. Aggarwal submitted an affidavit in which he testified that he had conformed to all applicable standards of care in his treatment of Pettiford and that he had not caused any injury to her.

**{¶ 7}** In response, Pettiford presented the affidavit of her expert, Trent Sickles, M.D., a family-medicine physician. Dr. Sickles affirmed that Dr. Aggarwal had deviated from accepted standards of care by failing to recognize a lung mass on Pettiford's x-ray. Dr. Sickles's affidavit did not include any testimony on the issues of proximate causation or damages.

**{¶ 8}** The trial court denied the motion for summary judgment, finding that a genuine issue of material fact was present.

**{¶ 9}** Dr. Aggarwal's counsel subsequently deposed Dr. Sickles to discover all of the opinions that he held in this case. Dr. Sickles testified that he had reviewed everything that was necessary to form his full and final opinions and that he was prepared to give those opinions. Dr. Sickles testified consistently with his affidavit and reiterated that Dr. Aggarwal had deviated from acceptable standards of medical care by failing to recognize the lung mass on Pettiford's June 1999 x-ray. Dr. Sickles further testified that he did not intend to render any opinions about (1) the treatment Pettiford may have undergone if a diagnosis had been made in June 1999, (2) the effect of the alleged three-year delay upon Pettiford's treatment or course, or (3) causation. Later in the deposition, Dr. Sickles stated that he had determined that he could not give any opinions about causation. At the conclusion of the deposition, Dr. Sickles confirmed that he had covered all of the opinions that he had formed.

**{¶ 10}** Shortly before trial, Dr. Aggarwal renewed his motion for summary judgment, alleging that Pettiford had conceded that she would be unable to provide expert testimony on causation. In response to the motion, Pettiford submitted a new affidavit from Dr. Sickles. In this affidavit, Dr. Sickles testified as follows:

**{¶ 11}** "1. My name is Trent Sickles. I am a licensed physician in the state of Ohio and I have given sworn testimony regarding the negligence of Dr. Aggarwal by Barbara Pettiford.

**{¶ 12}** "2.  I further agree to testify as an expert for the Plaintiff, Barbara Pettiford regarding damages she has suffered as a direct and proximate result of Dr. Aggarwal's negligence.

**{¶ 13}** "3.  Specifically, I believe that Ms. Pettiford endured pain and suffering for an extensive period of time as a direct and proximate result of Dr. Aggarwal's negligence in failing to diagnose the tumor in her right lung.

**{¶ 14}** "4.  I further believe that Ms. Pettiford suffered the crisis of a collapsed lung, and [an] extended hospital stay as a direct and proximate result of the negligence of Dr. Aggarwal."

**{¶ 15}** In response to Dr. Sickles's new affidavit, Dr. Aggarwal filed a reply memorandum and a motion to strike the affidavit.  Dr. Aggarwal contended that affidavits contradicting former deposition testimony may not be used to create, without sufficient explanation, genuine issues of material fact and defeat summary judgment.  Without offering any rationale, the trial court granted Dr. Aggarwal's motion for summary judgment and did not rule on the motion to strike.

**{¶ 16}** On appeal, the Second District Court of Appeals reversed in a divided opinion.  The lead opinion stated that contradictions existed between the deposition of Dr. Sickles and his subsequent affidavit.  *Pettiford v. Aggarwal*, 186 Ohio App.3d 705, 2009-Ohio-3642, 930 N.E.2d 351, at ¶ 38.  However, the court concluded that the rule espoused in *Byrd* prohibiting the use of a contradictory affidavit to defeat summary judgment did not control, because the rule applied only to contradictory affidavits of parties, not nonparty witnesses.  Id.

**{¶ 17}** The concurring opinion agreed that *Byrd* was limited in its application to parties but, unlike the lead opinion, found that Dr. Sickles's affidavit was "not unambiguously inconsistent with his prior deposition testimony."  Id. at ¶ 46-47.

**{¶ 18}** The dissenting judge found that Dr. Sickles's affidavit completely contradicted his deposition testimony. Id. at ¶ 58. The dissenting judge also disagreed with the majority's narrow reading of *Byrd* and would have applied its analysis and rule to retained expert witnesses. Id. at ¶ 62.

**{¶ 19}** The case is now before us on our acceptance of a discretionary appeal to determine whether an affidavit of a nonparty expert witness submitted in opposition to summary judgment that, without sufficient explanation, contradicts deposition testimony of that witness may create a genuine issue of material fact to defeat summary judgment. 123 Ohio St.3d 1507, 2009-Ohio-6210, 917 N.E.2d 810.

## Analysis

### A. *The Rule Adopted in Byrd v. Smith*

**{¶ 20}** In *Byrd*, we were called upon to resolve a certified conflict over whether a party's affidavit that is inconsistent with or contradictory to the party's deposition testimony should be considered by the trial court in deciding a motion for summary judgment. *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 1. The plaintiff, Bryan Byrd, sought uninsured/underinsured-motorist coverage related to injuries he sustained while driving a van owned or leased by his employer. Id. at ¶ 2-3. Byrd submitted an affidavit in opposition to summary judgment in which he outlined facts that were arguably inconsistent with his deposition testimony. Id. at ¶ 5 and 14-19. Without addressing the supposed inconsistency, the trial court granted summary judgment, and the Twelfth District Court of Appeals affirmed. Id. at ¶ 6–7.

**{¶ 21}** In answering the certified question, we were mindful of the purpose of summary judgment. We recognized that the procedure set forth in Ohio Civ.R. 56 is modeled after the corresponding federal rule and observed that the federal rules "are 'designed "to secure the just, speedy and inexpensive determination of every action." Fed. Rule Civ. Proc. 1 * * *. Rule 56 must be

construed with due regard not only for the rights of persons asserting claims and defenses that are adequately based in fact to have those claims and defenses tried to a jury, but also for the rights of persons opposing such claims and defenses to demonstrate in the manner provided by the Rule, prior to trial, that the claims and defenses have no factual basis.'  *Celotex Corp. v. Catrett* (1986), 477 U.S. 317, 327, 106 S.Ct. 2548, 91 L.Ed.2d 265."  Id. at ¶ 11.

{¶ 22} Bearing in mind the purpose of summary judgment, we turned our attention to the substantive issue.  We noted our holding in *Turner v. Turner* (1993), 67 Ohio St.3d 337, 617 N.E.2d 1123, that "a moving party's contradictory affidavit may not be used to obtain summary judgment."  *Byrd* at ¶ 22.  We acknowledged that "[w]hether *Turner*'s rule against a moving party's benefiting from an inconsistent affidavit should be applied to nonmoving parties is a matter of some dispute."  Id. at ¶ 23.

{¶ 23} In *Byrd*, we were cognizant that moving and nonmoving parties hold different positions and are afforded different standards during the summary-judgment analysis.  Most notably, during the trial court's review of the evidence for genuine issues of material fact, the nonmoving party receives the benefit of all favorable inferences.  In light of that dynamic, we adopted the following rule:

{¶ 24} "[W]hen determining the effect of a party's affidavit that appears to be inconsistent with the party's deposition and that is submitted either in support of or in opposition to a motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the deposition.  Unless a motion to strike has been properly granted pursuant to Civ.R. 56(G), all evidence presented is to be evaluated by the trial court pursuant to Civ.R. 56(C) before ruling.  If an affidavit of a movant for summary judgment is inconsistent with the movant's former deposition testimony, summary judgment may not be granted in the movant's favor.  * * *

**{¶ 25}** "With respect to a nonmoving party, the analysis is a bit different. If an affidavit appears to be inconsistent with a deposition, the court must look to any explanation for the inconsistency. We do not say that a nonmoving party's affidavit should always prevent summary judgment when it contradicts the affiant's previous deposition testimony. After all, deponents may review their depositions and correct factual error before the depositions are signed." *Byrd,* 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, at ¶ 26-27.

**{¶ 26}** We therefore held, "An affidavit of a party opposing summary judgment that contradicts former deposition testimony of that party may not, without sufficient explanation, create a genuine issue of material fact to defeat a motion for summary judgment." Id. at paragraph three of the syllabus.

*B. Application of Byrd v. Smith*

**{¶ 27}** Dr. Aggarwal urges us to extend the holding in *Byrd* to contradictory affidavits of nonparty experts. Conversely, Pettiford contends that the differing nature of the testimony and interests between a party and a nonparty renders the *Byrd* doctrine inapplicable to the affidavit of a nonparty expert. Additionally, Pettiford likens expert witnesses to nonparty lay witnesses and argues that counsel cannot prevent a nonparty expert from deliberately or inadvertently misstating facts during a deposition. We find Pettiford's positions unpersuasive.

**{¶ 28}** The rationale supporting the rule set forth in *Byrd* is germane to an affidavit of a retained, nonparty expert that contradicts former deposition testimony of that expert without sufficient explanation. Pettiford's reasoning overlooks both the critical distinctions between a lay witness and a retained expert witness and the similarities between a party and a retained expert witness.

**{¶ 29}** A nonparty lay witness offers testimony only on facts and receives no compensation for his or her testimony. Because the issue is not before us today, we are not deciding whether the *Byrd* analysis can be applied to a

contradictory affidavit of a nonparty lay witness. Similarly, we are not deciding whether the *Byrd* analysis can be applied to a nonparty expert witness who is not retained and compensated by a party or his or her attorney. An example of this type of nonparty expert would be the plaintiff's treating physician in a medical negligence case who has not been engaged by any party and is not being compensated for his or her testimony.

{¶ 30} These types of witnesses, however, are readily distinguishable from a nonparty expert witness who is retained and compensated by a party or his or her attorney. The retained expert witness is engaged to review the facts and offer opinion testimony on the essential, material elements of the claim at issue. In essence, the expert is an extended voice of the party and the proponent of the party's claims. Expert witnesses are also subject to more-restrictive discovery and evidentiary rules than fact witnesses. See, e.g., Evid.R. 601(D) and 702; Civ.R. 26(B)(5).

{¶ 31} Unlike an attorney's limited contact with a fact witness or a treating physician, an attorney's direction of a retained, nonparty expert is significant, akin to the attorney's direction of a party. The attorney directs the expert as to the subject matter upon which an opinion is needed, helps to determine what evidence the expert reviews, and works closely with the expert throughout the litigation to prove or defend against the causes of action. Because the expert's testimony is required to prove or defend against the claims, it is paramount that the attorney exercises a significant degree of control over the expert.

{¶ 32} While the attorney technically does not represent the expert during the expert's deposition, the attorney customarily prepares the expert for the deposition and supports the expert during the deposition just as he or she would with a party. And the attorney often acts during an expert's deposition as he or she would act during a party's deposition, objecting to opposing counsel's

questioning and rehabilitating the expert if necessary. If the attorney is dissatisfied with the expert's deposition testimony or believes that a misstatement has been made, the attorney has the ability to clarify the deposition on the record. Moreover, as we noted in *Byrd*, Civ.R. 30(E) provides the deponent with the opportunity to correct errors in form or substance and give a statement of reasons for any corrections, *Byrd*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, ¶ 27, which is often done in conjunction with the party's attorney. Thus, Pettiford's assertion that a nonparty witness does not have the benefit of counsel to protect him from misstatements is unavailing.

{¶ 33} In light of the fact that there is a process for reviewing and correcting deposition transcripts, we rejected the assertion in *Byrd* that the limited purpose of depositions and the manner in which they are taken excuse a deponent's cavalier treatment of facts established through deposition testimony. Id. at ¶ 27. This rationale holds equally true when a retained, nonparty expert deponent attempts to change or contradict the opinions established in deposition testimony in a subsequent affidavit.

{¶ 34} The numerous parallels between the degree of control an attorney has over a party and over a retained, nonparty expert lead us to the conclusion that *Byrd*'s ruling should apply to contradictory affidavits of retained, nonparty experts to prevent the use of a self-serving affidavit to defeat summary judgment. If a retained, nonparty expert is permitted to defeat summary judgment at the eleventh hour by changing his or her opinions without a sufficient explanation, summary judgment will be rendered meaningless.

{¶ 35} We are further persuaded by the reasoning of the Seventh Circuit Court of Appeals in extending the comparable federal sham-affidavit doctrine to retained, nonparty experts:

{¶ 36} "We can think of no reason, however, not to apply this rule to the present case involving the testimony and affidavit of the plaintiff's sole expert

witness. The purpose of summary judgment motions—'to weed out unfounded claims, specious denials, and sham defenses,' *Babrocky* [*v. Jewel Food Co.* (C.A.7, 1985)], 773 F.2d [857] at 861—is served by a rule that prevents a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony. Id. (quoting *Camfield Tires, Inc. v. Michelin Tire Corp.*, 719 F.2d 1361, 1366 (8th Cir. 1983))." *Adelman-Tremblay v. Jewel Cos.* (C.A.7, 1988), 859 F.2d 517, 521.

{¶ 37} Similarly, we can think of no reason that the *Byrd* doctrine should not be applied to retained, nonparty experts.

{¶ 38} We hold that an affidavit of a retained, nonparty expert contradicting the former deposition testimony of that expert and submitted in opposition to a pending motion for summary judgment does not create a genuine issue of material fact to prevent summary judgment unless the expert sufficiently explains the reason for the contradiction.

### C. Application of Byrd to Dr. Sickles's Testimony

{¶ 39} Dr. Aggarwal asks this court to apply the *Byrd* analysis in this case and hold that Dr. Sickles's affidavit contradicted his deposition testimony without sufficient explanation for the inconsistency. Pettiford counters that Dr. Sickles's affidavit merely supplemented his deposition testimony.

{¶ 40} The determination of whether Dr. Sickles's affidavit contradicted his deposition without a sufficient explanation for the alleged contradiction is a factual determination that is properly made by the trier of fact. The trial court did not expound on its reasoning for granting Dr. Aggarwal's motion for summary judgment and never ruled on the motion to strike Dr. Sickles's affidavit, and the appellate court declined to apply the *Byrd* analysis. In light of our clarification of *Byrd*'s applicability, the appropriate course is to remand this matter to the trial court to apply the analysis set forth herein. Accordingly, we remand this cause to the trial court to now engage in that analysis.

**Conclusion**

{¶ 41} For the foregoing reasons, we hold that an affidavit of a retained, nonparty expert contradicting the former deposition testimony of that expert and submitted in opposition to a pending motion for summary judgment does not create a genuine issue of material fact to prevent summary judgment unless the expert sufficiently explains the reason for the contradiction. We reverse the judgment of the court of appeals and remand this matter to the trial court for further proceedings consistent with this court's opinion.

Judgment reversed
and cause remanded.

LUNDBERG STRATTON, O'DONNELL, LANZINGER, and CUPP, JJ., concur.

BROWN, C.J., concurs in part and dissents in part.

PFEIFER, J., dissents and would affirm the judgment of the court of appeals.

_____

**BROWN, C.J., concurring in part and dissenting in part.**

{¶ 42} I agree with the majority that this matter should be remanded to the trial court for further proceedings. However, because I find that the majority's consideration of whether to extend *Byrd v. Smith*, 110 Ohio St.3d 24, 2006-Ohio-3455, 850 N.E.2d 47, is premature, I dissent from the majority's extension of *Byrd* to retained, nonparty experts.

{¶ 43} The parties disagree as to whether Dr. Sickles's affidavit contradicted or merely supplemented his deposition testimony. The trial court's summary judgment decision completely fails to address this issue. The trial court also failed to rule upon Dr. Aggarwal's motion to strike Dr. Sickles's affidavit, which was based upon Dr. Aggarwal's assertion that the affidavit contradicted the deposition testimony.

11

**{¶ 44}** Because the court of appeals held that *Byrd* was inapplicable to nonparties, a finding of whether Dr. Sickles's affidavit contradicted his deposition testimony was unnecessary to the appellate decision. *Pettiford v. Aggarwal*, 186 Ohio App.3d 705, 2009-Ohio-3642, 930 N.E.2d 351, at ¶ 38. However, each of the appellate opinions expressed a view regarding the nature of Dr. Sickles's affidavit and deposition testimony. The lead opinion recognized that "contradictions do exist between the deposition of Dr. Sickles and his subsequent affidavit." Id. The concurring opinion stated that Dr. Sickles's affidavit statements were "not unambiguously inconsistent with his prior deposition testimony." Id. at ¶ 46 (Grady, J., concurring). The dissenting opinion stated that Dr. Sickles's affidavit was "a complete contradiction." Id. at 67 (Donovan, P.J., dissenting).

**{¶ 45}** From the record, it is clear that the nature of Dr. Sickles's affidavit and deposition testimony has not been addressed explicitly by the lower courts. I agree with the majority that the determination of whether a contradiction exists should be made by the trial court. Therefore, I would remand this matter to the trial court for a determination of whether a contradiction exists. I find that no discussion of whether to extend the holding of *Byrd* to retained, nonparty experts is warranted until there has been a clear determination that the affidavit contradicts, not merely supplements, the deposition testimony.

_____

Lawrence J. White, for appellee.

Arnold, Todaro & Welch Co., L.P.A., and Kevin W. Popham, for appellant.

_____