**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Moore v. Mercy Med. Ctr.*, **Slip Opinion No. 2026-Ohio-2293.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2026-OHIO-2293

MOORE, INDIVIDUALLY AND AS PARENT, NATURAL GUARDIAN, AND NEXT FRIEND OF P.C.M., A MINOR, APPELLANT, *v.* MERCY MEDICAL CENTER ET AL., APPELLEES.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Moore v. Mercy Med. Ctr.*, **Slip Opinion No. 2026-Ohio-2293.]**

*Civil law—Summary judgment—Sham-affidavit rule—When an expert incorporates his Civ.R. 26(B)(7) expert report by reference into a properly framed affidavit, he adopts the contents of the report as part of the sworn affidavit for purposes of Civ.R. 56—Once an expert's report is properly before a court through a sworn affidavit, the court may assess the consistency of the opinions in the report and the affidavit under the sham-affidavit rule—Expert's affidavit contradicted the opinions expressed his prior report without sufficient explanation, so trial court acted within its discretion by striking the affidavit under sham-affidavit rule—Court of appeals' judgment affirmed.*

(No. 2024-1212—Submitted August 19, 2025—Decided June 23, 2026.)

APPEAL from the Court of Appeals for Stark County,
No. 2023 CA 00145, 2024-Ohio-2610.

———————————

HAWKINS, J., authored the opinion of the court, which KENNEDY, C.J., and DEWINE, DETERS, and SHANAHAN, JJ., joined. FISCHER, J., dissented, with an opinion joined by BRUNNER, J.

**HAWKINS, J.**

{¶ 1} Following a prolonged labor, appellant, Cheri Sheree Moore, gave birth to her son, P.C.M., who required intubation because he was in respiratory distress. Moore alleges that the respiratory distress and intubation caused injuries to P.C.M. Moore filed a medical-malpractice complaint against the hospital where she delivered the baby and against two physicians who were involved in her labor and delivery.

{¶ 2} One of the physicians, appellee Godwin Meniru, M.D., moved for summary judgment after Moore's expert concluded in his report that the alleged malpractice occurred during a time when Dr. Meniru was not on duty. In opposition, Moore filed an affidavit from the same expert stating that Dr. Meniru committed malpractice by failing to deliver the child within a certain time of his taking over Moore's care. This opinion was not included in the expert's original report. Dr. Meniru moved to strike the affidavit, arguing that it contradicted the opinions contained in the expert's report and was offered solely to create a genuine issue of material fact, in violation of the sham-affidavit rule. The trial court agreed and granted both Dr. Meniru's motion to strike and his motion for summary judgment. The Fifth District Court of Appeals affirmed.

{¶ 3} Moore contends that the trial court abused its discretion by striking the expert's affidavit under the sham-affidavit rule, arguing that the rule is inapplicable because the affidavit contradicted only the expert's earlier unsworn

report and thus raises an issue of the affidavit's credibility or weight, not its admissibility.

**{¶ 4}** We disagree. Because the expert incorporated his report into his affidavit, both documents were properly before the trial court on summary judgment and subject to the sham-affidavit rule. The trial court therefore acted within its discretion by striking the contradictory affidavit. We affirm the judgment of the court of appeals.

## BACKGROUND

**{¶ 5}** Moore was admitted to appellee Mercy Medical Center on May 27, 2015, to deliver her son, P.C.M. Dr. Meniru was the physician on duty at the time Moore was admitted. Dr. Meniru started Moore on Pitocin to induce her labor.

**{¶ 6}** Dr. Meniru's shift ended at 7:00 a.m. on May 28, 2015, and Moore's care was transferred to appellee Dr. Albert Domingo, who examined Moore during the beginning of his shift. Although the nurses continued to administer Pitocin in accordance with the doctors' orders, Moore's labor did not progress. Moore alleges that by 6:00 p.m. on May 28, there were signs of fetal intolerance to labor and excessive uterine activity. During his shift on May 28, Dr. Domingo received updates from the nursing staff regarding Moore's labor, including the signs of fetal intolerance to labor, but he did not conduct another physical examination of Moore.

**{¶ 7}** Dr. Meniru took over Moore's care again at 7:00 a.m. on May 29, 2015, and upon receiving reports of fetal distress by the hospital staff, stopped the Pitocin and ordered an emergency cesarean section ("C-section"). P.C.M. was delivered at 8:57 a.m. on May 29, 2015. P.C.M. was intubated and transferred to Akron Children's Hospital, where he was diagnosed with stridor and vocal-cord paralysis.

**{¶ 8}** In her 2022 deposition, Moore testified that P.C.M. had undergone a tracheotomy shortly after his birth. She further testified that he experiences

seizures, which are followed by temporary paralysis, has sensitivity to lights and sounds, exhibits speech delays, and has behavioral outbursts.

{¶ 9} In her amended complaint, Moore alleged that the hospital and the doctors and nurses involved in her labor and delivery deviated from accepted standards of care and caused permanent injuries to her son.

{¶ 10} The defendants filed answers and discovery commenced. Moore identified her experts, including Martin Gubernick, M.D., who concluded in his November 2022 expert report ("November 2022 report") that "Dr. Domingo, Dr. Meniru, [and] the nursing staff all deviated from good and acceptable practice by not advocating for a C-section in the evening of 5-28-2015. The standard of care required a C-section by [7:00 p.m. on 5-28-2015] . . . ."

{¶ 11} Dr. Meniru moved for summary judgment, asserting that he had not been involved in Moore's care on the evening of May 28, 2015, when according to Dr. Gubernick a C-section should have been performed.

{¶ 12} As part of her memorandum opposing Dr. Meniru's motion for summary judgment, Moore submitted an affidavit sworn by Dr. Gubernick in April 2023 ("April 2023 affidavit"), which expressly incorporated his November 2022 report. In the affidavit, Dr. Gubernick averred: "I provided my written expert report on November 16, 2022. A true and accurate copy of this report is attached to this affidavit as Exhibit 2." In the April 2023 affidavit, Dr. Gubernick offered the additional opinion that "[a]t a minimum, Dr. Meniru fell below the standard of care by failing to begin a [C-section] delivery within 30 minutes of receiving reports of fetal distress. . . . The delay in performing a [C-section] delivery caused and contributed to the respiratory distress of the child."

{¶ 13} Dr. Meniru filed a motion to strike the April 2023 affidavit, arguing that it introduced a new opinion that was contradictory to Dr. Gubernick's November 2022 report, in violation of the sham-affidavit rule.

4

{¶ 14} The trial court granted Dr. Meniru's motion to strike and his motion for summary judgment.

{¶ 15} Moore dismissed without prejudice the claims against the remaining defendants and appealed to the Fifth District, arguing that the trial court erred by striking Dr. Gubernick's affidavit and granting Dr. Meniru's motion for summary judgment.

{¶ 16} The Fifth District held that the trial court did not abuse its discretion by striking the April 2023 affidavit, because it contained a new and contradictory opinion regarding Dr. Meniru's care and treatment of Moore. 2024-Ohio-2610, ¶ 62, 82 (5th Dist.). The court of appeals also affirmed the trial court's summary judgment in favor of Dr. Meniru. *Id*. at ¶ 92.

{¶ 17} Moore appealed to this court asserting two propositions of law, which we accepted:

> Proposition of Law I: The Sham-Affidavit Rule does not apply, and an affidavit may not be stricken, where the sworn testimony only contradicts prior unsworn statements.

> Proposition of Law II: An inconsistency or contradiction within the four corners of an affidavit goes to credibility and weight, not admissibility, and will not justify an order striking the affidavit.

*See* 2024-Ohio-5572.

## ANALYSIS

{¶ 18} A court's ruling on a motion to strike will not be reversed on appeal absent an abuse of discretion. *State ex rel. Ebbing v. Ricketts*, 2012-Ohio-4699, ¶ 13. A court abuses its discretion when its decision is unreasonable, arbitrary, or unconscionable. *Id*. For the reasons that follow, we hold that the trial court did not

abuse its discretion when it struck Dr. Gubernick's April 2023 affidavit under the sham-affidavit rule.

{¶ 19} The term "sham affidavit" is used by courts to describe "'a contradictory affidavit that indicates only that the affiant cannot maintain a consistent story, or is willing to offer a statement solely for the purpose of defeating summary judgment.'" *Pettiford v. Aggarwal*, 2010-Ohio-3237, ¶ 1, fn. 1, quoting *Jiminez v. All Am. Rathskeller, Inc*., 503 F.3d 247, 253 (3d Cir. 2007).

{¶ 20} The sham-affidavit rule was first introduced in *Perma Research & Dev. Co. v. Singer Co.*, 410 F.2d 572 (2d Cir. 1969). Perma sued Singer for breach of contract related to an allegedly defective automobile part assembled by Singer. *Id.* at 573. Perma asked the court to set aside the contract on account of fraud, alleging that Singer had entered into the contract with the intention not to perform. *Id*. at 574. In opposition to Singer's motion for summary judgment, Perma submitted an affidavit by its president that was inconsistent with his earlier deposition testimony. *Id*. at 576, 578. In his deposition, Perma's president did not provide any factual basis to support the fraud alleged in Perma's complaint, other than discussing Singer's purported unsatisfactory performance under the contract. *Id*. at 576. However, in his later affidavit accompanying Perma's opposition to Singer's motion for summary judgment, he recounted conversations in which a representative of Singer had allegedly admitted that Singer had never intended to perform under the contract. *Id*. at 577. The United States Court of Appeals for the Second Circuit affirmed the district court's summary judgment in favor of Singer, reasoning that "[i]f a party who has been examined at length on deposition could raise an issue of fact simply by submitting an affidavit contradicting his own prior testimony, this would greatly diminish the utility of summary judgment as a procedure for screening out sham issues of fact," *id*. at 578.

{¶ 21} Ohio adopted the sham-affidavit rule in *Byrd v. Smith*, 2006-Ohio-3455. Byrd was injured in an automobile accident while driving his work vehicle,

and he sought uninsured/underinsured motorist coverage from his employer's insurer. *Id*. at ¶ 2-3. In his deposition, Byrd testified that he was on a personal errand at the time of the accident. *Id*. at ¶ 14. Relying on this testimony, the employer's insurer moved for summary judgment, arguing that Byrd was not within the scope of his employment at the time of the accident and was therefore not entitled to coverage under his employer's policy. *Id*. In his opposition to the insurer's motion for summary judgment, Byrd submitted an affidavit attesting that at the time of the accident, (1) the truck he was driving had a sign on the side advertising the company he worked for and indicating that the company was available for service 24 hours a day and (2) he was wearing a pager that had been issued by his employer and was required to respond to pages received both during and outside normal working hours. *Id*. at ¶ 15, 17-18. For these reasons, Byrd argued, when he was driving the vehicle, he was working and advertising for the company. *Id*. at ¶ 17-19. The trial court granted the insurer's motion for summary judgment, holding that because Byrd had been on a personal errand, he was not within the scope of his employment at the time of the accident. *See id*. at ¶ 6. Notably, the trial court's decision did not mention Byrd's affidavit. *Id*. at ¶ 6, 20.

{¶ 22} Byrd appealed, and the Twelfth District Court of Appeals affirmed the trial court's judgment, holding that "'neither a movant nor a respondent can prevail on summary judgment by creating an issue of material fact through the use of contradictory or conflicting summary judgment materials.'" *Id*. at ¶ 7, quoting *Byrd v. Smith*, No. CA2004-08-067 (12th Dist. Feb. 7, 2005).

{¶ 23} When the case was appealed as a certified conflict, this court addressed whether a trial court may disregard a party's affidavit that is inconsistent with or contradictory to the party's prior deposition testimony when ruling on a motion for summary judgment. *Id*. at ¶ 8, 26, 28.

{¶ 24} This court noted that parties are not in the same position with respect to summary judgment; the moving party has the burden to demonstrate the lack of

a genuine issue of material fact, and the nonmoving party receives the benefit of the court's viewing the evidence in a light most favorable to him. *Id*., 2006-Ohio-3455, at ¶ 25, citing *Dresher v. Burt*, 1996-Ohio-107, ¶ 19, and *Temple v. Wean United, Inc.,* 50 Ohio St.2d 317, 327 (1977). We held that "when determining the effect of a party's affidavit that appears to be inconsistent with the party's deposition and that is submitted either in support of or in opposition to a motion for summary judgment, a trial court must consider whether the affidavit contradicts or merely supplements the deposition." *Id*. at ¶ 26. If the moving party's affidavit in support of summary judgment is inconsistent with the moving party's prior deposition testimony, "summary judgment may not be granted in the movant's favor." *Id*., citing *Turner v. Turner*, 1993-Ohio-176. However, if the nonmoving party's affidavit submitted in opposition to a motion for summary judgment is inconsistent with the nonmoving party's former deposition testimony, then the nonmoving party "must sufficiently explain the contradiction before a genuine issue of material fact is created." *Id*. ¶ 29.[1]

{¶ 25} A few years later, in *Pettiford*, this court extended the sham-affidavit rule adopted in *Byrd* to include affidavits by nonparty experts. We held that an affidavit by a retained, nonparty expert that contradicts the expert's prior deposition testimony does not create a genuine issue of material fact for purposes of opposing a motion for summary judgment, unless the expert sufficiently explains the reason for the contradiction. *Pettiford*, 2010-Ohio-3237, at ¶ 38. We explained that extending the rule serves the purpose of summary judgment—""""to weed out unfounded claims, specious denials, and sham defenses""""—by preventing a party from manufacturing issues of credibility through a witness's contradiction of his own prior testimony. *Id*. at ¶ 36, quoting *Adelman-Tremblay v. Jewel Cos.*, 859 F.2d

---

1. This court ultimately reversed the Twelfth District's judgment because that court had rejected Byrd's affidavit without considering his explanation for the inconsistency or contradiction. *Byrd*, 2006-Ohio-3455, at ¶ 31.

8

517, 521 (7th Cir. 1988), quoting *Babrocky v. Jewell Food Co.*, 773 F.2d 857, 861 (7th Cir. 1985).

{¶ 26} In his November 2022 report, Dr. Gubernick opined that Dr. Domingo, Dr. Meniru, and the nursing staff had breached the standard of care by not advocating for a C-section on the evening of May 28, 2015. Subsequently, in his April 2023 affidavit, Dr. Gubernick provided a new opinion—that Dr. Meniru had breached the standard of care by failing to begin a C-section within 30 minutes of being notified of fetal distress on the morning of May 29, 2015. The dissent contends that these opinions are not contradictory. *See* dissenting opinion, ¶ 41. However, Dr. Gubernick initially opined that the standard of care *required* that the C-section be performed by 7:00 p.m. on May 28, 2015, but his later opinion extended that deadline to the morning of May 29. These two opinions are clearly contradictory.

{¶ 27} Under her first proposition of law, Moore contends that the sham-affidavit rule does not apply here for two reasons. First, she explains the contradiction by arguing that Dr. Gubernick's April 2023 affidavit was based on new evidence that was not known at the time he created his November 2022 report. Moore notes that at the time Dr. Gubernick authored his November 2022 report, Dr. Meniru had not yet been deposed. In his March 2023 deposition, Dr. Meniru testified that he received two calls from the hospital staff on the morning of May 29, 2015, prior to his arriving at the hospital. The first call was received at 7:27 a.m. and the second call at 7:32 a.m. According to Dr. Meniru, during the second call, the hospital staff notified him of fetal-heart decelerations, which made him go to the hospital "immediately." Dr. Meniru arrived at the hospital at 8:37 a.m.

{¶ 28} Dr. Gubernick relied on this statement from Dr. Meniru's deposition regarding the phone calls when he stated for the first time in his April 2023 affidavit that the care provided by Dr. Meniru fell below the standard of care when he failed to begin a C-section delivery within 30 minutes of receiving reports from the

hospital staff of fetal distress. In her attempt to provide a sufficient explanation for the contradiction between Dr. Gubernick's November 2022 report and his subsequent April 2023 affidavit, Moore asserts that the details of the two phone calls on the morning of May 29, 2015, were not recorded in Moore's chart and were not known until Dr. Meniru's deposition. We disagree.

{¶ 29} In Dr. Meniru's operative report, which was available to the parties prior to the creation of Dr. Gubernick's November 2022 report, Dr. Meniru stated the following:

> I was paged by about 7:30 [a.m.] on May 29, 2015 regarding [Moore] indicating that she was still in labor and was now 10 cm according to the RN nurse who was taking care of her. She relayed her clinical findings including the fact that the patient was at -1 station. She also reported late fetal heart decelerations. I asked for Pitocin to be discontinued and to watch the patient's condition closing [sic] pending my arrival.

{¶ 30} Because this information was available to the parties before Dr. Gubernick created his November 2022 report, Moore's explanation for the contradiction between Dr. Gubernick's report and his affidavit is insufficient and the trial court did not abuse its discretion by striking the April 2023 affidavit.

{¶ 31} Second, Moore contends that the sham-affidavit rule applies only to contradictions in sworn testimony—generally between a party's deposition testimony and a subsequent affidavit. Moore argues that the rule does not apply here, because Dr. Gubernick's November 2022 report was unsworn and does not constitute testimony. We reject this argument.

{¶ 32} "One of the purposes of the Rules of Civil Procedure is to eliminate surprise." *Jones v. Murphy*, 12 Ohio St.3d 84, 86 (1984). Civ.R. 26(B)(7) governs

the disclosure of expert testimony. It requires that an expert's report contain "a complete statement of all opinions and the basis and reasons for them as to each matter on which the expert will testify" and further provides that an expert may not testify or offer opinions on matters not disclosed in the report. Civ.R. 26(B)(7)(c).

{¶ 33} The Civil Rules further prescribe what evidence may be considered in summary-judgment proceedings.

> Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, written admissions, affidavits, transcripts of evidence, and written stipulations of fact . . . show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. No evidence or stipulation may be considered except as stated in this rule.

Civ.R. 56(C).

{¶ 34} Evidentiary materials not expressly permitted by Civ.R. 56(C) may be considered only if they are properly incorporated by reference through an affidavit that complies with Civ.R. 56(E). *See, e.g.*, *State ex rel. Corrigan v. Seminatore*, 66 Ohio St.2d 459, 467 (1981) ("The requirement of Civ.R. 56(E) that sworn or certified copies of all papers referred to in the affidavit be attached is satisfied by attaching the papers to the affidavit, coupled with a statement therein that such copies are true copies and reproductions.").

{¶ 35} When an expert incorporates his Civ.R. 26(B)(7) expert report by reference into a properly framed affidavit, he adopts the contents of the report as part of the sworn affidavit for purposes of Civ.R. 56. Once the expert's report is properly before the court through a sworn affidavit, the court may assess the consistency of those opinions under the sham-affidavit rule.

{¶ 36} Moore complied with Civ.R. 26(B)(7) by submitting Dr. Gubernick's November 2022 report, Dr. Gubernick subsequently incorporated that report by reference into his April 2023 affidavit in accordance with Civ.R. 56(E), and Moore submitted the documents in support of her opposition to Dr. Meniru's motion for summary judgment. Because both documents were properly before the trial court on summary judgment and the April 2023 affidavit contradicted the opinions expressed in the November 2022 report without sufficient explanation, the trial court acted within its discretion by striking the affidavit under the sham-affidavit rule.

{¶ 37} Finally, Moore argues under her second proposition of law that an inconsistency or contradiction in an affidavit goes to credibility and weight, not admissibility. We disagree.

{¶ 38} In *Pettiford*, this court noted that at the summary-judgment stage, the sham-affidavit rule serves to "'prevent[] a party from creating issues of credibility by allowing one of its witnesses to contradict his own prior testimony.'" 2010-Ohio-3237, at ¶ 36, quoting *Adelman*, 859 F.2d at 521.

{¶ 39} A trial court acts within its discretion when it strikes a contradictory affidavit rather than treating the inconsistency as an issue of credibility or weight. The trial court did not act in an unreasonable, arbitrary, or unconscionable manner when it struck Dr. Gubernick's contradictory affidavit under the sham-affidavit rule.

## CONCLUSION

{¶ 40} The trial court's decision to strike Dr. Gubernick's April 2023 affidavit under the sham-affidavit rule was not an abuse of discretion. Accordingly, we affirm the judgment of the Fifth District Court of Appeals.

Judgment affirmed.

_____

**FISCHER, J., joined by BRUNNER, J., dissenting.**

{¶ 41} I agree with the majority opinion's resolution of the legal issue in

this case—the sham-affidavit rule may be used to strike an expert affidavit that incorporates a prior contradictory statement by the expert. However, I disagree with the majority opinion's application of that rule in this case. Here, there was no clear contradiction between the expert affidavit and the incorporated prior statement. Therefore, the trial court abused its discretion when it struck the affidavit under the sham-affidavit rule. The judgment of the Fifth District Court of Appeals holding otherwise should be reversed.

{¶ 42} The sham-affidavit rule precludes a party from creating an issue of fact to prevent summary judgment by submitting an affidavit that directly contradicts previous sworn testimony of the affiant. *See Pettiford v. Aggarwal*, 2010-Ohio-3237, ¶ 38. In *Byrd v. Smith*, 2006-Ohio-3455, this court held that when comparing an affidavit with an earlier sworn statement when ruling on a motion for summary judgment, a trial court must consider whether the later affidavit "contradicts or merely supplements" the earlier statement. *Id.* at ¶ 29. And importantly, when considering an alleged inconsistency for purposes of summary judgment, all inferences must be made in favor of the nonmoving party. *Id.* at ¶ 25.

{¶ 43} In this case, Dr. Martin Gubernick's original expert report stated that the standard of care for physicians indicates that a C-section should have been ordered by appellee Dr. Albert Domingo by 7:00 p.m. on May 28, 2015, and that if the C-section had been performed by then, more likely than not, the child of appellant, Cheri Sheree Moore, would not have been injured. However, a C-section was not ordered by Dr. Domingo. Dr. Gubernick's later affidavit stated that since a C-section was not performed on May 28, appellee Dr. Godwin Meniru should have ordered a C-section within 30 minutes of learning of Moore's condition on May 29 and that if the C-section had been performed by then, more likely than not, Moore's child would not have been injured. This is not a clear contradiction to warrant application of the sham-affidavit rule.

{¶ 44} It is entirely possible that Dr. Domingo deviated from the accepted

standard of care by not ordering a C-section by 7:00 p.m. on May 28 and that Dr. Meniru also deviated from the accepted standard of care by not ordering a C-section within 30 minutes of learning of Moore's condition on May 29. It is also entirely possible that had a C-section been performed at *either* of those times, the child's injuries could have been prevented.

{¶ 45} The sham-affidavit rule should be applied sparingly and only in instances when there is a clear contradiction, not merely a possible one, *see Byrd*, 2006-Ohio-3455, at ¶ 29. Thus, courts should be exceedingly careful when determining whether a true contradiction exists. A trial court should make all inferences in favor of the nonmoving party, and if it is unclear whether an affidavit actually contradicts a prior sworn statement, the court should deny summary judgment. *See id.* at ¶ 25. Then, the issue of any possible contradiction between the two statements would be left for the fact-finder when considering the credibility of the evidence.

{¶ 46} Because there is no clear contradiction in this case between Dr. Gubernick's affidavit and his prior report, I would hold that the trial court abused its discretion by striking Dr. Gubernick's affidavit under the sham-affidavit rule. Therefore, I would reverse the judgment of the Fifth District Court of Appeals and remand this case to the trial court for further proceedings.

_____

Ryan, L.L.P., Thomas P. Ryan, and Daniel J. Ryan; and Flowers & Grube and Louis E. Grube, for appellant.

Perez Morris, Matthew J. Turkalj, and Jeanne M. Mullin, for appellee Godwin Meniru, M.D.

Spangenberg, Shipley & Liber, L.L.P., and Dustin B. Herman; and Leeseberg Tuttle, L.P.A., and Craig S. Tuttle, urging reversal for amicus curiae Ohio Association for Justice.

Poling, Brant E. Poling, Jaime L. Glinka, Dalia G. Safadi, and Jaycie J.

Kuhn, urging affirmance for amicus curiae Ohio Association of Civil Trial Attorneys.

_____